IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ERIN D. PROCTOR, | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 7:18-cv-00087 |
| v. | ) | |
| | ) | By:  Elizabeth K. Dillon |
| LARRY T. EDMONDS, *et al.*, | ) | United States District Judge |
| Defendants. | ) | |

## MEMORANDUM OPINION

Erin D. Proctor, a Virginia inmate proceeding *pro se*, filed this case pursuant to 42 U.S.C.

§ 1983, asserting several claims against a number of defendants.  Prior rulings by this court

resulted in the dismissal of some claims and the entry of summary judgment for some defendants

on other claims.  At this point, only two claims remain in the case, both against defendant

Jefferson: a First Amendment retaliation claim and an Eighth Amendment excessive force claim.

Jefferson, a former Virginia Department of Corrections correctional officer, was served, but he

failed to timely answer or otherwise respond to the complaint.  He has not participated in the

action, nor has any attorney entered an appearance on his behalf.

In an order entered May 26, 2020, the court directed Proctor to respond as to why his

remaining claims against Jefferson should not be dismissed based on Proctor's failure to

prosecute them.  (Dkt. No. 55.)  Proctor filed a response (Dkt. No. 56), and the court addressed it

in a June 12, 2020 order (Dkt. No. 58).  As relevant to Jefferson, that order declined to dismiss

the case for failure to prosecute, based on Proctor's explanation and overall conduct in the

litigation.  It noted, however, that Jefferson was in default and advised Proctor that if he "wants

to seek the entry or default and/or a default judgment against Jefferson, he must file a motion

pursuant to Rule 55 within thirty days.  If he fails to do so, or to take some other action to

proceed on his claims against Jefferson," the claims against Jefferson would be dismissed. (Dkt. No. 58 at 2–3.)

Proctor has now filed a motion for default judgment (Dkt. No. 60), which is pending before the court and addressed herein. As already noted, Jefferson is in default, and so the court will direct the Clerk to enter default against Jefferson, pursuant to Federal Rule of Civil Procedure 55(a). For the reasons explained below, Proctor's request for default judgment, pursuant to Rule 55(b), will be denied as to his Eighth Amendment claim, but granted as to liability on his First Amendment retaliation claim. The court will refer the matter to United States Magistrate Judge Joel C. Hoppe for further proceedings as to the proper amount of damages to be awarded to Proctor on his retaliation claim.

## I. DISCUSSION

### A. Default Judgment Standard

Rule 55(a) allows entry of default by the clerk, which the court has stated will be directed. Rule 55(b) governs requests for default judgment. It allows the clerk to enter a default judgment where "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation" and, "[i]n all other cases," the rule requires the party to apply to the court for a default judgment, Fed. R. Civ. P. 55(b)(1)–(2). The court may grant a default judgment against a defendant who has been properly served and "fails 'to plead or otherwise defend' in accordance with the rules." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982); Fed. R. Civ. P. 55(b)(2). Jefferson has failed to plead or otherwise defend in this suit.

Moreover, by failing to answer or otherwise respond, Jefferson has admitted the "well-pleaded allegations of fact" in the complaint, except for those relating to damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); Fed. R. Civ. P. 8(b)(6). Thus, if

the allegations in the complaint (now deemed admitted) are sufficient to entitle Proctor to relief,

then default judgment against Jefferson is proper.  Accordingly, the court must review the

complaint to ensure that its allegations are sufficient to establish Jefferson's liability.  *See Joe*

*Hand Promotions, Inc, v. Citibars, Inc.,* 2:11cv58, 2012 WL 503212, at *3 (E.D. Va. Feb. 8,

2012) ("[T]he Court must nevertheless determine whether Plaintiff's complaint states a claim

upon which relief can be granted.") (citing *Anderson v. Found. for Advancement, Educ. & Emp't*

*of Am. Indians,* 155 F.3d 500, 506 (4th Cir. 1998)).  The court addresses each of Proctor's claims

against Jefferson separately.

## B.  First Amendment Retaliation Claim

Both claims arose while Proctor was housed at Dillwyn Correctional Center.  Proctor's

complaint alleges that, on April 6, 2017, Jefferson "set up" an altercation with him so that

Proctor would be charged with a "false and fabricated misconduct charge" of an "aggravated

assault upon a non-offender."  (Compl. 8, Dkt. No. 1.)[1]  Jefferson did this to retaliate against

Proctor because Proctor had told Jefferson that he was going to file a complaint against him after

Jefferson had called him a "bitch."  Proctor told Jefferson this either on April 6, 2017,

immediately preceding the altercation, or a week earlier; it is not clear.[2]  During the disciplinary

hearing on this charge, moreover, Jefferson gave false testimony against Proctor.  Ultimately,

---

[1]   The documentation from the disciplinary record reflects that the altercation with Jefferson occurred on April 6, 2017.  The charge actually alleged that Proctor *attempted* to commit aggravated assault upon a non-offender, and the charge was brought by Sgt. Smith, after he investigated Jefferson's allegations against Proctor.

[2]   The complaint states that Proctor told Jefferson "a week before this incident that he was going to file a complaint against him" for calling Proctor a "bitch."  Grievance documents submitted by Proctor after the incident, however, suggest that it all may have occurred on the same day.  That is, the grievance documents state that Jefferson called Proctor a "bitch" as he "smacked" Proctor's ID card out of his hands and then that Proctor asked to see a sergeant so he could complain about Jefferson's conduct.  It was at that point that Jefferson came at Proctor in an attempt to manufacture an altercation and enable him to charge Proctor with misconduct.  (*See, e.g.*, Dkt. No. 28-2 at 4–5 (Proctor's April 7, 2017 informal complaint form and April 20, 2017 Level I grievance, describing what occurred); *see also* Edmonds Aff. ¶¶ 6–7, Dkt. No. 28-2 (setting forth dates of both documents).)

Proctor was convicted of the charge, which resulted in his transfer to a level 4 institution, rather than a level 3 institution, where he remained for a lengthy period of time.  Proctor also alleges that, as a result of Jefferson's actions, he was placed in segregated housing which constitutes "cruel and unusual punishment."  (Compl. 11–12.)

To succeed on his § 1983 claim alleging First Amendment retaliation by Jefferson, Proctor must establish that (1) he engaged in protected First Amendment activity, (2) "the alleged retaliatory action adversely affected his protected speech," and (3) a but-for causal relationship existed between the protected activity and the retaliatory act.  *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015).

Proctor has adequately alleged the first element on his retaliation claim because prisoners have a "First Amendment right to be free from retaliation for filing a grievance" under the prison's established grievance procedure.  *Booker v. S.C. Dep't of Corrs.*, 855 F.3d 533, 541 (4th Cir. 2017).  Here, Proctor had not yet filed his grievance, but he told Jefferson he was going to file a complaint against him.  Either immediately following that conversation or one week later, *see supra* at note 2, the retaliatory altercation manufactured by Jefferson occurred, and Proctor was immediately taken to segregated housing.  Based on those events, Proctor was charged with the false misconduct charge.  The court concludes that, on these facts, Proctor's threat to file a complaint against Jefferson was protected First Amendment activity.

To be sure, in most cases where similar retaliation claims are addressed, the prisoner already has filed a grievance or lawsuit, as opposed to just threatening to do so.  *See, e.g.*, *Booker*, 855 F.3d at 541.  There are cases, however, in which courts squarely have held that threatening (or stating an intention) to file a grievance is protected First Amendment activity. *E.g.*, *Jones v. Williams*, 791 F.3d 1023, 1035–36 (9th Cir. 2015) (holding that prisoner's verbal

complaints and statements of intention to file suit were protected First Amendment conduct);

*Carter v. Dolce*, 647 F. Supp. 2d 826, 834 (E.D. Mich. 2009) (holding that prisoner's threat to

file grievance was exercise of First Amendment rights); *Sprau v. Coughlin*, 997 F. Supp. 390

(W.D.N.Y. 1998) ("[P]laintiff's conduct in threatening to file a [prisoner] complaint was

protected by the First Amendment[] . . . ."); *see also Jilani v. Harrison,* No. 5:15-CT-3271-FL,

2018 WL 1545584, at *5 (E.D.N.C. Mar. 29, 2018), *aff'd,* 732 F. App'x 208 (4th Cir. 2018)

(addressing a retaliation claim based on the plaintiff-prisoner's threat to file a grievance, but

dismissing the claim because the allegations were conclusory); *cf. Tonkin v. Shadow Mgmt., Inc.*,

No. 3:12-CV-00198-JFA, 2014 WL 1320255, at *2 (D.S.C. Mar. 28, 2014) (holding that

threatening litigation was protected activity for purposes of a Title VII retaliation claim).

Moreover, if the retaliatory altercation occurred immediately after Proctor notified Jefferson he

was going to complain, as may be the case, then it is not even clear that Proctor had the

opportunity to file a grievance before Jefferson retaliated against him.  On those facts, then, the

court concludes that Proctor sufficiently engaged in protected activity.

To establish the second element of his retaliation claim, Proctor must show an action by

Jefferson that "would likely deter a person of ordinary firmness from the exercise of First

Amendment rights," *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474,

500 (4th Cir. 2005).  The Fourth Circuit has recognized that the bringing of a false disciplinary

charge against a prisoner can be a sufficiently adverse action to satisfy the second element.

*Booker v. S.C. Dep't of Corr.*, 583 F. App'x 43, 44 (4th Cir. 2014).  Thus, taking his allegations

as true, Proctor also has established the second element of his claim.

Likewise, Proctor expressly pleads that the entire altercation was manufactured by

Jefferson as a retaliatory act in response to Proctor's threatened complaint.  The temporal

proximity between Proctor's threat to file a grievance and Jefferson's action (regardless of

whether the events were separated by mere minutes or a week) further supports that assertion.

Accordingly, for purposes of entering default judgment, the court concludes that there are

sufficient admitted facts to establish Jefferson's liability.

Because Proctor has established all three elements of his retaliation claim, default

judgment will be entered against Jefferson as to liability on this claim.  The issue of damages is

discussed *infra* at Section I-D.

**C.  Eighth Amendment Excessive Force Claim**

The excessive force claim also is based on Jefferson's conduct on April 6, 2017.

Specifically, Proctor alleges that after he told Jefferson he was going to the control booth to get a

sergeant so that he could complain about Jefferson, Jefferson smacked Proctor's ID card out of

his hand and said, "You ain't going to do nothing."  Then, when Proctor went to pick up the ID

card, Jefferson came at the plaintiff with both hands balled up.  (Dkt. No. 1 at 10.)

The Eighth Amendment prohibits prison officials from inflicting unnecessary and wanton

pain and suffering on prisoners.  *Whitley v. Albers*, 475 U.S. 312, 320 (1986).  To succeed on an

excessive force claim, a plaintiff must show that the prison official (1) used "nontrivial" force

(objective component), *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010), and (2) acted with

"wantonness in the infliction of pain" (subjective component), *Whitley*, 475 U.S. at 322.

A review of the limited allegations in the complaint against Jefferson reveal that Proctor

has not established an excessive force claim against Jefferson.  Although Proctor repeatedly

refers to Jefferson's conduct as an "assault," nowhere in his complaint does Proctor allege that

Jefferson actually touched him.  Jefferson merely smacked an ID card out of Proctor's hands and

then moved toward Proctor as if he was going to fight.  Accepted as true, these allegations do not

show that Jefferson used "nontrivial" force against Proctor.

Nor does Proctor's complaint allege that he suffered any injuries at all during the incident.  While even a *de minimis* injury can give rise to an excessive force claim, Proctor does not allege that he suffered any injury at all or even experienced any pain.  As the *Wilkins* court explained:

> [N]ot "every malevolent touch by a prison guard gives rise to a federal cause of action." [*Hudson v. McMillian*, 503 U.S. 1, 9 (1990).]  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.*, at 9–10 (some internal quotation marks omitted). An inmate who complains of a "'push or shove'" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Id.*, at 9 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

*Wilkins*, 559 U.S. at 37–38; *see also Henslee v. Lewis*, 153 F. App'x 179, 180 (4th Cir. 2005) ("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983.").

Like the "push or shove" referenced in *Wilkins*, Jefferson's actions of smacking the ID card from Proctor's hands does not objectively constitute cruel and unusual punishment.  Thus, the admitted allegations do not show an Eighth Amendment violation by Jefferson.  Accordingly, the motion for default judgment will be denied as it relates to the excessive force claim.

**D.      Damages**

Having determined that Proctor is entitled to judgment against Jefferson as to his First Amendment retaliation claim, the court must next determine the amount of damages to be awarded to Proctor for this claim.  Proctor's complaint asks for $5,000 in damages, but his request is not dispositive as to the amount to be awarded.  Instead, a defendant's default results

in the plaintiff's factual allegations being "accepted as true for all purposes, excluding the

determination of damages." *Tweedy v. RCAM Title Loans, LLC*, 611 F. Supp. 2d 603, 605 (W.D.

Va. 2009) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)); *see*

*also* Fed. R. Civ. P. 8(b)(6); *see also S. Bank & Trust Co. v. Pride Grp.,* LLC, No. 2:14-cv-255,

2015 WL 410726, at *4 (E.D. Va. Jan. 28, 2015) (noting same).

Rule 55(b) directs that, where the amount sought is not for a sum certain, the court "may

conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . .

determine the amount of damages . . . ." Fed. R. Civ. P. 55(b)(2)(B).  The court concludes that

additional evidence from Proctor will be required to determine the amount of damages to which

he is entitled to as a result of Jefferson's retaliation.  Accordingly, this matter will be referred to

United States Magistrate Judge Joel C. Hoppe, pursuant to 28 U.S.C. § 636(b)(1)(B), for further

proceedings, including a hearing if necessary, and preparation of a report setting forth a

recommended disposition for an amount to be awarded Proctor on his First Amendment

retaliation claim against Jefferson.[3]

## II.  CONCLUSION

For the foregoing reasons, Proctor's motion for default judgment (Dkt. No. 60) will be

---

[3]  Federal Rule of Civil Procedure 55 also instructs that, in conducting such hearings or making referrals, the court must preserve any "federal statutory right to a jury trial," Fed. R. Civ. P. 55(b)(2), but Proctor has not demanded a jury in this case.  Accordingly, it is appropriate for this court to determine the amount of damages, based on evidence presented to Judge Hoppe, his recommendation, and any objections thereto.

granted in part and denied in part, and this matter will be referred to Judge Hoppe for a

recommended disposition on the amount of damages to be awarded to Proctor.

      Entered: August 14, 2020.

*/s/ Elizabeth K. Dillon*

      Elizabeth K. Dillon
      United States District Judge